the next case. Mr Boyd. Good morning, Your Honors. Andy Boyd from the State Appellate Defender's Office on behalf of Defendant Christopher Vaughn. Your Honors, the first and most important thing I'd like to talk about this morning is a bit of a prosecutorial misconduct argument and our juror misconduct argument. What I'd like to argue is that the prosecution here had a systematic and improper plan in place to demonstrate to the jury that Christopher's unemotional reaction after this incident was somehow evidence of his guilt. And following that, not surprisingly, the jury went ahead and determined that Christopher's lack of emotion was evidence of his guilt. And the problem, the essential problem here was that Christopher's unemotional reaction was nothing more than a reflection of his shy and low-key personality. In other words, Christopher's personality was just that. It was his personality. It was certainly not evidence of his guilt. Well, if time permits... Yes, Your Honor. That goes with the weight of the evidence, not whether it's evidence. Respectfully, Your Honor, no. In this case, what we had was, among other things, some indications from some state witnesses that Christopher's personality was very introverted and low-key. How would the jury consider that against the prosecution's argument that this guy was seen, you know, nonplussed by the fact that his wife and kids were dead? The argument here, Your Honor, respectfully, is that Christopher's personality following this incident and during the police interviews was entirely consistent with his personality at all other times. We have testimony from a number of different states' witnesses in a number of different contexts that all indicate that Mr. Vaughn was introverted, low-key, bland, kind of a blob personality, and that's exactly, precisely how he was after this incident and during the police interviews. In other words, that proves nothing. But why are these not evidentiary facts? I mean, why couldn't a reasonable juror say, you know what, even the most introverted guy in the world is liable to show some reaction when his wife and kids show up dead? And they're free to accept your argument as to why he showed no reaction, and they can accept that or reject it. In other words, you seem to make this like an issue of law that the state couldn't argue that, as opposed to whether is this just an evidentiary issue for the jury to weigh. In our view, Your Honor, it is a matter of law, because all this was, again, was a reflection of this individual's, Mr. Vaughn's, Mr. Vaughn's, Mr. Vaughn's personality. Well, what's your authority for that? The authority, the central authority that we have are these Foss and Bowen cases, which would say, and I do understand that this was in the context of a defendant's demeanor in trial, but what it was, the authority is that a defendant's demeanor at times other than while he's testifying is not evidence, and we would respectfully request that that principle be broadly construed in this case. Let me try a similar, what I think might be a similar analogy. Let's suppose that there's a crime and the police approach somebody and he sees the police and he turns away in headlong flight. Now, they could say, gee, that's, but you bring in 15 witnesses that say, you know, this guy just has, since the day, since he could walk, he had this, every time he saw a policeman, he turned around and fled. And that's just the way his personality was. So because of that, the state can't argue that his headlong flight, when the police approached him right after this crime, was evidence of guilt. Number one, I think that might be a reasonable argument to make. It would be entirely consistent with the argument we're making here. Number two, there is some case law, if I recall, and it doesn't pertain to this case, but there is some case law out there that says that that flight from a police officer can be perhaps probable cause or reasonable suspicion. So in a case where you have something like headlong flight, that's arguably more relevant to this case than what we have here, even if it is consistent with somebody's personality. And I would also respectfully suggest, Your Honor, that the hypothetical that you pose is sort of unusual. Very few people have a personality trait that leads them to flee headlong from the police every time they see police officers. Many people, including the defendant, Mr. Vaughn, in this case, have very bland, low-key, shy personality. But isn't there a difference between the witnesses that said this is just how he is, and all of their past experiences with him? I mean, none of his past experiences would include the death of his wife and children, by any means, certainly, but certainly by these means. I mean, I know your argument, your brief said that this was not body language, but isn't that really what we're getting at, his way he conducted himself and all of his reaction, including facial expressions? If I understand Your Honor's question correctly, people react to stressful situations, traumatic situations, in very different ways. How do we know that? Whose obligation is it to? I mean, are we supposed to take judicial notice of this, or what? If it's the state that's presenting this as evidence of Mr. Vaughn's guilt, it's the state's obligation to present evidence somehow that Mr. Vaughn's consistent personality at other times and after these events is somehow evidence of his guilt. It's the state's obligation to present that evidence, and they didn't do that. They didn't present any sort of psychology or psychologists who said that there's scientific evidence that shows that shy, introverted people are more likely to commit murder than excitable or gregarious people. That evidence wasn't introduced. Well, I don't think that was their argument. I think that the argument was that even shy, introverted people, when faced with the death of their children and spouse, might show some reaction other than, I'll be done. They might. They might. They might. And you, in the defense, can make the argument that's just the way he is. I mean, he's just a shy. And then the jury can, and I'm saying, it seems to me you're taking an evidentiary issue and trying to make it a legal issue. And so you want the court to rule that the state can't argue that a person's demeanor when being interviewed by the police can't be circumstantial evidence of guilt. We're not asking for a bright line rule here, Your Honor. We're not asking for a bright line rule. What we're arguing in this case is that in this case, because his personality was exactly, precisely the same before this incident as it was afterwards, that it could not have been evidence in your case. And I've heard the question from Justice O'Brien as well as yourself is, well, wouldn't even an ordinarily shy or introverted person, given the traumatic nature of these events, show some kind of dramatic emotional response? Well, maybe. There are plenty of situations, and I don't mean to overly personalize this, but there was a traumatic situation I was involved in about 20 years ago where some friends of mine were killed. And that didn't hit me until about four days later. I had very little emotional reaction until about four days later. This happens to folks. So in the absence of some sort of psychological or psychiatric evidence, it should have been presented by the state, and it wasn't, that people always have dramatic emotional reactions immediately after these events. If the defendant had taken the witness stand and testified and answered the same questions and the prosecutor posed the same questions that, say, for example, the police officer posed, could the jury take into account his demeanor in answering those questions and assessing his credibility? I believe the law says that a defendant's demeanor while he's testifying in trial is fair game. Yes, Your Honor, to answer that question. Whether he's, what's the difference between whether he's being videotaped, interviewed by the police, or for that matter, even if there's no videotape of somebody, or even a neighbor, or somebody else describes, hey, I see John coming home, and the police are over there, and his family's been murdered. And so I don't want him to see that horrible scene, so I stop him, and I say, hey, John, don't go there. Your family's murdered. And he says, oh, how'd he know? And you don't think that is admissible, because John's an introverted guy? The difference would be, if the defendant is testifying on stand, as a matter of law, his demeanor at that point is admissible. Here, in this case, what we've got, and I know I'm just repeating myself over and over again, and I got popular. We'll get the same questions over and over, so that's fair. But what we have, and this is the essential point, is that we have somebody who didn't react in some sort of a very dramatic way, didn't react somehow aggressively, or angrily, or in hostility, that might have indicated that perhaps he was prone to something like this. We have somebody who's just a bland, low-key, kind of a mellow guy, and that's the way he was before this incident, and that's the way he was after this incident. And what the state tried to do was submit, systematically, they did this in their opening statement, then they presented the testimony that Sergeant Boston had said that this guy didn't react appropriately, then they presented these DVDs, and then they went after it in their rebuttal argument, very systematically saying that his personality is somehow indicative of his guilt. And then we have, to wrap this brief argument up, we have the jurors who came out and told us in his media interviews that they considered Mr. Vaughn's personality. So we have a situation here where all we've got is this guy's personality, and all it is is a low-key personality. It's nothing more than that. It's not a hostile personality, it's not an angry personality, it's not an aggressive personality. You said it's all we have is his personality? In terms of this particular argument, of course. And we absolutely concede that there was physical evidence presented, and I didn't mean to infer that there was not. I just prefer this particular argument. So your argument is that's it, right? Yes. Now the question is, why is it reversed? Why would it be prejudicial? Fair question. What we argue here is that we have, the state certainly thought that this was important enough to mention in their opening statements. The state thought that this was important enough to put Sergeant Fawcett on the stand to testify that Mr. Vaughn's behavior and demeanor after he'd been informed that his children were killed was inappropriate. Then we have the state going ahead and presenting these very long DVDs of the interviews in which Mr. Vaughn showed very little emotion. Then we have the state coming after Mr. Vaughn very hard, very aggressively, in the rebuttal argument, arguing that this was inappropriate. And then we have the jury telling us, in their own words, that they thought that this was appropriate. And we also have the state's attorney himself talking on these media interviews about how incredibly important Mr. Vaughn's lack of emotion was in this case. This cannot be harmless error. This cannot be prejudicial. This had to have had some effect on the jury's verdict. And we know this because the state emphasized it so hard. And we know this, Your Honor, because the jury told us. Well, to sum it up, you're just saying he was convicted on his personality. You're just saying he was convicted on his personality. We concede that there was physical evidence presented. And we also concede that the jury took that into account because they told us that, too. We don't dispute that. Well, even if they took it into account, let's suppose that we say, OK, if we were to send this back and they can't take that into account, why would the result be any different in light of all the other evidence? I can't tell you, Your Honor, to a mathematical certainty that the result would be different. What I can argue, and what I am trying to argue, is that every defendant, regardless of what they're charged with, as heinous a crime as it might be, has a right to have their guilt or innocence determined on the elements of the crime. And this stuff that got thrown in there that was nothing more than Christopher's personality that was consistent throughout his entire life and consistent after this event, that got tossed in there by the state and the jury considered it. So what we're asking for is to have a jury consider this offense simply on the elements of the crime without all this extraneous stuff about whether Christopher's reaction after this incident was appropriate or not on some sort of armchair psychologist point of view. But doesn't the case law tell us that we've got to decide, OK, let's suppose this is error. And if we agree with you that it's error, then we have to determine that the error made a difference and that there's some probability that the result would be different without that error. In other words, that he. And what we have here that helps our case, we believe, is, and we don't have this in very many cases, but we have it here. We've got the jurors telling us that it made a difference. They told us. They told us flat out. Now, we're not arguing that the jurors said that that was the only reason that they convicted. We can see that it's not. But the jurors came right out and they said it was important. That's how we know. That's how we know it was important. And that's how we know it was prejudicial, Your Honor. Well, just because something's important, there can be 18 important things. But none of them by themselves are just positive. You take one of those important things out, you've still got 17 important things that would lead to a conviction. And so the fact that error might have been important, it's a question is, did it turn the tide? And that's a fair question. And all I can do is retreat back to my main point, is that the state thought this was important enough to hit it in its opening statement, present testimony on it, show the long, long, long DVDs. And then they went ahead and hammered away at it in a rebuttal argument. They didn't just talk about this a little bit in their rebuttal argument. Again, and again, and again, and again, and again, they hammered away at it. And then the jurors came out, and they told us this mattered. This mattered in this verdict. And that's why, that's one of the reasons, at any rate, that we need a new trial. We need to take this prejudicial stuff about Mr. Vaughn's bland personality, we need to put it off to the side, and we need to focus on the elements of the crime here, Your Honor. That's what we need to do in this next trial. You're saying it was emphasized as much as blood spatter, et cetera. Yes. Yes, that would be the argument, yes. Thank you, Your Honor. We respectfully ask that you reverse the conviction and order a new trial. Thank you, Mr. Boyd. Mr. Arado. May it please the Court. Good morning, Your Honors. Good morning. Counsel. We are, well, this case is one of the more disturbing ones that I've had to deal with. The evidence in this case goes way beyond Mr. Vaughn's personality. But to address the arguments this morning, the case law says that it is entirely proper for a jury or for evidence of a defendant's nonverbal communication during a police interview, recordings of a police interview, to be introduced at trial. And there's no question that the jury would have watched this video and come to a conclusion about Mr. Vaughn's personality or his behavior if you don't even mention it. Now, both sides got to argue that this is what the defendant's reaction was inappropriate under the circumstances of finding out that his wife and children were dead. And the defendant can argue that this was just his personality based upon the evidence. I believe, Justice Schmidt, you have accurately portrayed this as being an evidentiary issue. Whose idea was it that it's inappropriate? Where'd that come in from? It's an argument that is consistent. There's some evidence of that? I mean, there's evidence of a, a behavior, correct? But now we've got an interpretation of that behavior, right, of appropriateness. Correct. And which psychologists did the state call to present that? There's no need for psychological evidence. No, because it is a common human experience that this is the reason why we have a jury system. We don't say, hey, jury, ignore everything that you're going to see here and just focus upon what he said, not how he said it. Now, the common human experience is when you have people that are close to you that die, you get upset about it. I mean, if you want to talk about human experience and personal experience, my father passed away last year. And I am not exactly the most emotional person in the world, but I reacted very poorly to that. So those things I cannot completely see from a human experience when I'm the jurors in the jury room. So you're saying that the ordinary experiences of life, jurors can bring those into the trial and make reasonable inferences or inferences. Whether they're reasonable or not, they can make inferences. Correct. OK. So there doesn't have to be this. You don't have to redact the video and only have a transcript. Is that what you're saying? Correct. I mean, the video is clearly admissible. I mean, there's no argument that it wasn't admissible. So the jury is going to be watching this and drawing their conclusions based upon what the evidence says. Well, if we wanted a purer. You could eliminate the video portion and just have audio, but that's not what the law requires. I mean, one of the reasons why I record these murder interviews is to make sure the police aren't abusing the individual, but also to protect and preserve what is actually happening in that interview. And that encompasses everything in that interview, including how the defendant is reacting to what's going on. So it is a matter of evidence, not a matter of law. This court would rule that a jury can't consider or you can't argue that a defendant, how he reacts to learning news of the death or anything in an interview, why do we have the recordings? Why are they watching the recordings? Why are we even bothering with this? Well, you said it just a minute ago. The power of the state, police brutality, to prevent that so that there can be an inference that that was coercive. That's why you would introduce the video. That's right, but maybe the video needs to be allowed not to go into anything else beyond that. No, that's not really why. Well, you asked, why do we have it? That's one of the reasons. One of the reasons, not the only reason. So you're saying the other reason is so that jurors can see reactions of the citizen accused. Absolutely. And make inferences as to evidentiary inferences treating it as evidence of guilt. Yes. I mean, if a defendant. Do we have any law that makes a clear statement like we just made of that, that that's why we have that? Well, I mean, I can tell you that the general assumption. The admissibility allows that. The admissibility allows that. I mean, it's a silent witness rule. The jurors, the video is considered a, I can't give you the exact case because it's not. But the video is considered to be, it speaks for itself. It presents what actually happened during that interview. So yeah, that's the admissibility. And it tells you everything that went on during that process. Also, if the defendant were a, laughed at everything that he was ever told, and you had people coming in and saying, well, yeah, he just laughed at everything, would that mean that people couldn't draw an inference that when he was told that his wife and children were dead, that when he laughed, you couldn't argue that that was inappropriate? No. So what we have here is evidence of nonverbal communication. Nonverbal movement by the defendant is admissible in the context of the police interview recordings. And the law is that you can draw reasonable inferences from any evidence that is presented at trial. This is reasonable inference. And then defense counsel argued the reasonable evidence. And I also point out, defense counsel in post-trial argument said, it's entirely appropriate for the jury to consider that this was the defendant's demeanor in the recordings. I think that the argument on appeal is not appropriate, because he's basically arguing contrary to his own admission below. Since counsel did not address any other arguments, so we will stand on our brief for the remaining arguments. If you have any other questions, otherwise, we request that you affirm your convictions. Thank you. Thank you, Mr. Arado. Mr. Boyd, for your vote. Thank you, Your Honor. Just a couple of very brief matters to wrap things up. The first thing, opposing counsel argues that the video speaks for itself. It does. And it shows the same darn thing that Mr. Vaughn always exhibited, is that he's got a bland, low-key, nothing, mellow personality. That's all the video shows in terms of the defendant's demeanor. It doesn't show anything other than that. The second thing I'd like to talk about very briefly. Now, the jury was aware of that as a general character predisposition or trait of the defendant. Am I correct? I'm not sure I got your question, Your Honor. Well, I mean, will there be something in the trial that they were informed this is a normal way of behaving by the defendant? I thought you said that earlier. The state, in this case, brought some witnesses who testified, among other things, by way of background, I suppose, that Christopher had a very bland and low-key personality. These were the state's witnesses that just stated that, again, I think by way of background. I don't know that there's a proposition of the law intended by that. This was the state's evidence by way of background. Did that answer your question? I think where you were asking is that you, in fact, were the defendant presented evidence that this was his demeanor, that this is just the type of person he is. So whether or not the video showed him in a certain way, you had the opportunity and, in fact, did, in fact, say that's just who he is. I mean, that is something that you could say. As to the waiver argument, yes. Let me, if I could interrupt. Can you? Yeah. You might not finish. We'll go with that, because that's important. Would you finish up your statement? In terms of the waiver argument? Yes. It's permissible for counsel to respond to the state's arguments. And if the state makes an improper argument, and I've cited case law to that in my brief, I can't recall it offhand. But if the state makes an argument that's improper, it's acceptable for a defense attorney to fight fire with fire, so to speak. So our argument is that this issue should not be considered waived, because what counsel was doing was merely responding to arguments or statements that the court made. Your Honor, I had a question. And as Mr. Arado pointed out, you're not arguing that this videotape was inadmissible? No, sir. No. So let's suppose that the state had never said a word. But you find out later that some jurors considered this defendant's matter-of-fact demeanor in this interview as evidence of guilt. OK? Would that be improper for a juror, an average person sitting there and watching this guy, to consider his demeanor in answering that if the state had never said a word about it during the trial? That's a fair question. I'll have to concede I hadn't thought about that. The argument would be jurors are charged with deciding cases on the basis of the elements of the crime. And in this case, Mr. Vaughn's personality had nothing to do, was not probative, of any element of the crime. But could the jury consider his demeanor in answering those questions if the state had never said a word about it? No, Your Honor. And Your Honor, how do you support that? The only thing I could do is fall back on Bowen and Floss, which I do concede is slightly factually different from this case. But a defendant's demeanor is not evidence. That's simply what the law says. And even given Your Honor's hypothetical, that's not what happened here. What happened here was that the state hammered away at this. Well, it was a long way to Tipperary, but I'm getting there. And so if the jury could consider that the state hadn't said a word about it, then why can't the state argue? If the jury could draw that inference, why can't the prosecutor argue what he believes to be a reasonable inference from the evidence? I don't think that the jury can consider it. His personality is something that's extrinsic. It's not probative of anything. They shouldn't be considering it, regardless of whether the state ever had a question. I think you were trying to make a rather statement that they can't consider demeanor. Is that correct? In general, yes. In general and in the case itself. Well, they make a determination of credibility, don't they? Can't jurists make decisions as to credibility? I believe this person. I don't believe this person. Absolutely. And can't they take demeanor into account making that conclusion? Absolutely they can. But what we have here, hypothetically, if we had defendants who's accused of a crime, and the testimony is that before this incident occurred, he was a very quiet, introverted, shy guy, like Mr. Launders. But after the incident occurred, he's crying. He's sweating. His heart appears to be beating very quickly. His face is red. He's making a lot of crazy gestures with his hands or things like that. Then perhaps, perhaps, I'm not conceding this, but perhaps a juror might make a common sense determination that something is going on here that would have tripped this kind of emotional reaction in that hypothetical that I proposed. But we don't have that here. We don't have that here. What we have is simply the same personality throughout. Let me just say, on a legal issue, so if your argument's correct, then wouldn't you not be entitled to a jury instruction if they show this video that they're jurors? You cannot consider the defendant's demeanor. This videotape you saw, before you see it, you can only consider what was said. You cannot consider the defendant's nonverbal conduct or his demeanor whatsoever in deliberating in this case. As to whether there should be a jury instruction or not? Well, would we be the first court in the world to ever come up with that proposition? And I am not asking this court to be the first court in the world to do that. Well, if, how can we, by your argument, not come to the conclusion that you've got to tell the jury they can't consider the fellow's demeanor in deliberating the case? Again, we're not asking for a bright line rule. What we're asking for the court to do in this case, in this particular case, is find that what we've got here is a defendant whose personality and demeanor are consistent throughout his entire life, both before this incident and after it, and that can't possibly be evidence of anything germane to the elements of this case. And it seems to me, again, that's an evidentiary argument that was made below and made to the jury, and they weren't buying it. They clearly didn't buy it. What they clearly did buy was that the state improperly argued that this guy's personality was evidence of his guilt. And that was improper, Your Honor. And for that reason, along with all the other reasons that I've cited in my brief, we respectfully ask for this court to reverse the conviction and remand for a new trial, if there's no other questions. Thank you, Your Honor. Thank you, Mr. Boyd. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued as soon as possible. And right now, we will stand in a recess until 11 o'clock.